UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,
GEICO CASUALTY COMPANY,

                    Plaintiffs,

            -against-

IGOR TOLMASOV, BENESSERE SERVICES,
INC., GYSAKA SERVICES, INC., FRANKLIN
SQUARE MED SERVICES, INC., MAKSYM FESLER,
AND JOHN DOES NOS. "1" THROUGH "10,"

                    Defendants.
-----------------------------------X

**MEMORANDUM & ORDER**
21-CV-07058 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company and GEICO Casualty Company (together, "Plaintiffs" or "GEICO") commenced this action on December 22, 2021, against Igor Tolmasov, Benessere Services, Inc. ("Benessere"), Gysaka Services, Inc. ("Gysaka"), Franklin Square Med Services, Inc. ("Franklin Square"), Maksym Fesler, and John Doe Defendants Nos. 1-10 (collectively, "Defendants"), seeking declaratory relief and damages, alleging that Defendants submitted thousands of fraudulent No-Fault insurance charges relating to "medically unnecessary, illusory, and otherwise non-reimbursable" medical equipment and devices.  (ECF No. 1, Complaint ("Compl.").)  On April 11, 2022, GEICO moved for injunctive relief, seeking: (1) a stay of all collection arbitrations arising under New York's No-

Fault insurance laws that are pending before the American Arbitration Association ("AAA") and of all insurance collection lawsuits in state court brought by Defendants against GEICO pending disposition of this federal action; and (2) a preliminary injunction prohibiting Benessere, Gysaka, Franklin Square, and anyone acting on their behalf, from commencing any new No-Fault collection arbitrations or state collection lawsuits against GEICO pending disposition of this federal action. (ECF No. 27-2, Memorandum of Law in Support of Plaintiffs' Motion ("Pl. Mem."), at 1.) For the reasons set forth below, Plaintiffs' motion for injunctive relief is granted.

## BACKGROUND

### I.   New York's No-Fault Insurance Laws

New York enacted the Comprehensive Automobile Insurance Reparations Act, New York Insurance Law ("N.Y. Ins. Law") §§ 5101–5109, to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *Med. Soc'y of State of N.Y. v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003) (citing Governor's Mem. approving L. 1973, ch. 13, 1973 McKinney's Session Laws of N.Y., at 2335). Under those No-Fault insurance laws, No-Fault insurers like GEICO may reimburse patients without requiring proof of the other driver's fault in an amount up to $50,000, including for necessary

expenses incurred for medical or other professional health services. *See* N.Y. Ins. Law § 5102(a)(1), (b). Insurers must verify an insured's claim for benefits and then pay or deny the claim within 30 days. *See* N.Y. Ins. Law § 5106(a); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11 § 65-3.8(a), (c). In certain circumstances, an insured may also assign his or her benefits "directly to providers of health care services" so that the provider may receive direct payment from the insurer. 11 NYCRR § 65-3.11(b).

Section 5106 of the New York Insurance Law creates a "[f]air claims settlement" procedure for all No-Fault claims. No-Fault insurance benefits are deemed overdue if they are not paid or denied within 30 calendar days after the insured submits a proof of claim. *See* N.Y. Ins. L. § 5106(a); 11 NYCRR § 65-3.8(c). If an insurer fails to comply with this timeframe, it is precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses. *See Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 890 N.E.2d 233, 236 (N.Y. 2008); *Cent. Gen. Hosp. v. Chubb Grp. of Ins. Cos.*, 681 N.E.2d 413, 415 (N.Y. 1997). A claimant may bring a civil collection action in state court to recover overdue No-Fault benefits, and in that action the claimant need only show that the prescribed statutory billing forms were mailed and received and that the claimed benefits are overdue.

*See Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co.*, 35 N.E.3d 451, 457 (N.Y. 2015).

Insurers must also include a clause in their policies allowing the insured to seek arbitration of their claims for No-Fault benefits. *See* N.Y. Ins. L. § 5106(b); 11 NYCRR § 65-1.1(a), (d). New York's No-Fault insurance laws establish the procedures for arbitration of any disputed claims. *See* 11 NYCRR § 65-4.5. By statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administering the No-Fault arbitration process. *Id.* § 65-4.2(a)(2). Insurers generally bear the costs associated with the arbitration process in direct proportion to the frequency with which they are named as respondents. *Id.* § 65-4.2(c)(1). That "arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible" where "[d]iscovery is limited or non-existent." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (citing 11 NYCRR § 65-4.5). "Complex fraud and racketeering claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Id.*

An insurer who pays No-Fault benefits and subsequently discovers fraud may bring an action for damages. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 229-35 (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v.*

*CPT Med. Servs., P.C.*, No. 04-cv-5045, 2008 WL 4146190, at *6-7 (E.D.N.Y. Sept. 5, 2008).  Where the insurer has not paid, the insurer may bring an action for a declaratory judgment that it is not liable for any unpaid claims because the provider has committed fraud or breached applicable No-Fault regulations.  *See* 28 U.S.C. § 2201; *Gov't Emps. Ins. Co. v. Jacques*, No. 14-cv-5299, 2017 WL 9487191, at *9-*11 (E.D.N.Y. Feb. 13, 2017), *report & recommendation adopted*, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 09-cv-2990, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009), *report & recommendation adopted*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010).  If an insurer is precluded from asserting a defense to coverage (such as provider fraud) due to its noncompliance with the 30-day rule, however, it will also be precluded from obtaining a declaratory judgment on those same grounds.  *See Allstate Ins. Co. v. Williams*, No. 13-cv-2893, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015), *report & recommendation adopted*, 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015); *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-cv-4295, 2013 WL 5131057, at *8 (E.D.N.Y. Sept. 12, 2013).

## II.  GEICO's Allegations

Plaintiffs allege that, since 2019, Defendants are medical equipment suppliers and those suppliers' owners who have submitted more than $545,000 in fraudulent bills to GEICO for unnecessary medical equipment and rental medical equipment as part

of a scheme designed to exploit New York's No-Fault insurance laws. (Compl. ¶¶ 5, 13, 490.)  Those charges were purportedly medically unnecessary, illusory, and otherwise not reimbursable.  Defendants allegedly perpetrated a fraudulent scheme by paying referring physicians to issue Defendants unnecessary prescriptions for medical equipment, and Defendants then billed GEICO under the company's No-Fault insurance policies for supplying that equipment. (*Id.* ¶ 2.)  Though the prescriptions were ostensibly on behalf of actual patients, Tolmosov, Fesler, and John Doe Defendants allegedly accessed a network of various healthcare providers to issue prescriptions to New York-based patients. (*Id.* ¶¶ 2, 3-7, 44.)

Plaintiffs seek to recover more than $545,000 that Defendants obtained from GEICO, a declaration from the Court that GEICO is not legally obligated to reimburse Defendants for over $2,450,000 in pending No-Fault claims that Defendants have submitted, and a preliminary injunction precluding certain Defendants from commencing new arbitrations and state collection actions and staying pending collection arbitrations and actions against GEICO. (Compl. ¶ 5.)  GEICO asserts causes of action based on the Racketeering Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and unjust enrichment. (*Id.* ¶¶ 504-84.)

**III.  Collection Proceedings**

In support of its motion, GEICO submitted the declaration of GEICO's Claims Manager Kathleen Asmus that details the process for collecting No-Fault claims through arbitration, the individual AAA arbitrations against GEICO brought by the Defendants, the process for collecting No-Fault claims within the New York City civil courts, and the state collection lawsuits the Defendants are currently prosecuting against GEICO.  (ECF No. 27-4, Declaration of Kathleen Asmus ("Asmus Decl.").)

According to Asmus, Defendants are currently prosecuting (i) 196 collection arbitrations against GEICO before the AAA, seeking to recover more than $315,000; and (ii) 656 lawsuits against GEICO in various New York civil courts, seeking to recover more than $1.185 million.  (Asmus Decl. ¶ 20.)  In addition to the bills that are presently subject to state court lawsuits or arbitrations, Defendants have submitted over 2,100 additional bills to GEICO (totaling more than $1.1 million) that are the subject of GEICO's present declaratory judgment claim and can be the subject of new No-Fault collection arbitrations or lawsuits in New York civil court. (*Id.* ¶ 21.)  GEICO seeks to stay these pending arbitrations and state lawsuits and to enjoin Defendants from commencing any new collection arbitrations or state collection actions.  (Pl. Mem.)

In support of Plaintiffs' requested relief, Asmus asserts that the procedures and practices in No-Fault arbitration

proceedings impose significant limitations on insurers like GEICO. Insurers generally are not permitted to seek or obtain pre-hearing discovery beyond the discrete bill and claim at issue, which hinders an insurer's ability to demonstrate a pattern of medically unnecessary treatment or fraudulent billing practices across multiple patients and claims. (Asmus Decl. ¶ 33.) During the pendency of this case, Defendants have continued to pursue collection of individual bills through arbitration and state court proceedings. (Pl. Mem. 10; Asmus Decl. ¶¶ 7-8, 12-13, 17-18, 20.) GEICO argues that the statutorily expedited No-Fault arbitration procedures and civil court proceedings cannot accommodate the time or resources needed for GEICO to demonstrate the complex "fraudulent scheme involving fraudulent behavior that – by Defendants' design – is not readily apparent from the face of any individual bill or treatment record." (Pl. Mem. 25.)

## IV. Defendants' Business Operations

In support of its motion for injunctive relief, GEICO also submitted the declaration of GEICO's Special Investigative Unit case investigator, Daniel Curto, that describes how Defendants do not appear to be operational as companies, with the collection proceedings remaining as Defendants' sole source of assets. (ECF No. 27-5, Declaration of Daniel Curto ("Curto Decl.").) According to Curto, the Defendants have stopped billing GEICO or are billing through other new entities. (*Id.* ¶¶ 11, 15,

19-21.)    The Defendants do not appear to operate at their
publicized business addresses or have any recorded personal or
real property.  (*Id.* ¶¶ 12-14, 16-18, 22.)  Lastly, the Defendants
appear to be issuing checks to entities that do not appear to
provide any services or have any legitimate business purposes.
(*Id.* ¶ 23.)  The Court will discuss Defendants' operations below
in connection with the irreparable harm prong of Plaintiffs'
motion.

## DISCUSSION

          GEICO moves to stay and enjoin Defendants' No-Fault
collection proceedings.  Courts in this Circuit have looked to the
preliminary injunction standard under similar circumstances.  *See
Gov't Emps. Ins. Co. v. Cean*, No. 19-cv-2363 (PKC)(SMG), 2019 WL
6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing *Allstate Ins. Co.
v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)); *see also
Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir.
2005).  To justify a preliminary injunction, "a movant must
demonstrate (1) irreparable harm absent injunctive relief; and (2)
'either a likelihood of success on the merits, or a serious
question going to the merits to make them a fair ground for trial,
with a balance of hardships tipping decidedly in the plaintiff's
favor.'"  *Metro. Taxicab Bd. of Trade v. City of New York,* 615
F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City
Dep't of Educ.,* 519 F.3d 505, 508 (2d Cir. 2008)).  "The showing

of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Elzanaty*, 929 F. Supp. 2d at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).

Defendants assert that Plaintiffs have failed to show irreparable harm and can be fully compensated by money damages. Defendants further argue that the Second Circuit, under similar circumstances, has denied injunctive relief. (ECF No. 28, Defendants' Memorandum of Law in Opposition ("Def. Mem.").) As discussed, *infra*, however, the Second Circuit cases Defendants rely on are materially distinguishable.

As a threshold matter, the Court notes that GEICO's complaint and the instant federal action are substantially similar to several recent actions involving analogous allegations of widespread fraudulent medical billing under New York's No-Fault insurance laws. *See Gov't Employees Ins. Co. v. Moshe*, No. 20-cv-1098, 2020 WL 3503176, at *4 (E.D.N.Y. June 29, 2020); *Gov't Employees Ins. Co. v. Strut*, No. 19-cv-728, 2020 WL 1820500, at *3 (W.D.N.Y. Apr. 10, 2020); *Gov't Emps. Ins. Co. v. Advanced Comprehensive Laboratory, LLC*, 20-cv-2391, 2020 WL 7042648 at *9 (E.D.N.Y. Dec. 1, 2020), *appeal withdrawn*, 2021 WL 1382384 (2d Cir. Feb. 23, 2021); *Gov't Employees Ins. Co. v. Wellmart RX, Inc.*,

435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020), *appeal dismissed*, No. 19-4414 (2d Cir. May 11, 2020); *Cean*, No. 19-cv-2363, 2019 WL 6253804, at *6; *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 235 (E.D.N.Y. 2018); *Gov't Employees Ins. Co. v. Mayzenberg*, No. 17-cv-2802, 2018 WL 6031156, at *11 (E.D.N.Y. Nov. 16, 2018); *Gov't Employees Ins. Co. v. Strutsovskiy*, No. 12-cv-330, 2017 WL 4837584, at *8 (W.D.N.Y. Oct. 26, 2017); *Elzanaty*, 929 F. Supp. 2d at 223.   Indeed, this Court previously granted injunctive relief in favor of GEICO in substantially similar actions.  *See Advanced Comprehensive Laboratory,* 2020 WL 7042648 at *9; *Wellmart*, 435 F. Supp. 3d at 456.  Defendants make no effort to distinguish the cited prior decisions from this case.

Having considered the numerous district court decisions in this Circuit and Second Circuit decisions addressing similar circumstances, and upon review of the factual allegations in the instant complaint and GEICO's supporting submissions and declarations and Defendant's opposition submissions, this Court concludes that GEICO has satisfied the elements for injunctive relief.  Accordingly, for the reasons set forth below, GEICO's motion to stay all pending No-Fault collection arbitrations before the AAA and state collection actions involving Defendants, and to enjoin Defendants from commencing against GEICO any future No-Fault collection arbitrations before the AAA or state collection

actions pending this Court's resolution of the instant federal action, is granted.

### a. Irreparable Harm

A party seeking injunctive relief must establish, *inter alia*, irreparable harm. *See, e.g., Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir.1999). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling*, 295 F.3d at 214 (quoting *New York Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)). Defendants contend that money damages are adequate to redress Plaintiffs' alleged harm and that the Second Circuit has held that litigation and inconvenience are insufficient to establish irreparable harm. However, courts in this Circuit have held that "[i]rreparable harm occurs where 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action.'" *Moshe*, 2020 WL 3503176, at *1 (quoting *Parisien*, 352 F. Supp. 3d at 233); *see also Elzanaty*, 929 F. Supp. 2d at 222; *Mayzenberg*, 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018); *Gov't Employees Ins. Co. v. Zaitsev*, No. 20-cv-03495, 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2021); *Gov't Employees Ins. Co. v. Wallegood, Inc.*, No. 21-

cv-1986, at *9-10 (E.D.N.Y. July 16, 2021); *Gov't Employees Ins. Co. v. Landow*, No. 21-cv-1440, 2022 WL 939717, at *12 (E.D.N.Y. Mar. 29, 2022).

In disputing the irreparable harm GEICO would face, Defendants rely on *Allstate Insurance Co. v. Harvey Family Chiropractic*, a summary order issued by the Second Circuit that affirmed the denial of an insurance company's request to stay No-Fault arbitrations and state court collection suits. 677 F. App'x 716 (2d Cir. 2017). Defendants argue that GEICO's proposed injuries are compensable by monetary damages and therefore GEICO has not established irreparable harm. (Def. Mem. 6-7.) Defendants further contend that GEICO has not provided any evidence that it cannot recover these arbitration costs or would not be able to recoup those costs if they prevail. (*Id.*) However, for the reasons set forth in this Court's decisions in *Advanced Comprehensive Laboratories* and *Wellmart*, the Second Circuit's summary decisions in *Harvey* does not preclude injunctive relief, because irreparable harm may be established by "the risk of inconsistent judgments, or...the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment." *Advanced Comprehensive Laboratory*, 2020 WL 7042648 at *9; *Wellmart*, 435 F. Supp. 3d at 451 ("the Second Circuit [in *Harvey*] said nothing of the risk of inconsistent judgments, or of the risk that money damages would not be available if plaintiff

ultimately obtained a declaratory judgment"); *see also Moshe*, 2020 WL 3503176, at *2 ("*Harvey* does not preclude granting an injunction to avoid inconsistent judgments").

Here, and in both *Advanced Comprehensive Laboratory* and *Wellmart*, where an insurer alleges a risk of inconsistent judgments in No-Fault arbitrations and RICO- and fraud-based litigation in federal court, irreparable harm may be shown.  Indeed, numerous district courts in this Circuit have also found irreparable harm in similar circumstances.  *See, e.g.*, *Mayzenberg*, 2018 WL 6031156, at *5 ("The concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover."); *Moshe*, 2020 WL 3503176, at *2 (finding irreparable harm where 4,786 pending arbitrations against GEICO presented a risk of inconsistent judgments); *Advanced Comprehensive Laboratory,* 2020 WL 7042648 at *8, 11-12 (finding irreparable harm where permitting a defendant's individual collection arbitrations and lawsuits would "nullify [GEICO's] efforts to prove fraud at a systematic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive [GEICO] of an avenue towards complete relief in any court"); *Wellmart*, 435 F. Supp. at 449 (finding irreparable harm

where the "crux of GEICO's argument is, absent a stay, the collection proceedings will not merely drain GEICO of time and resources, but will also invite inconsistent judicial outcomes"); *Cean*, 2019 WL 6253804, at *5 (finding irreparable harm where an insurer spends resources "defending numerous no-fault actions" when those actions could be resolved in a "single, pending declaratory judgment action"); *Strutsovskiy*, 2017 WL 4837584, at *6-7 (finding irreparable harm in similar circumstances); *see also Liberty Mut. Ins. v. Excel Imaging*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while [insurer's] claim for a declaratory judgment remains pending in this Court puts the Plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case").  The findings and conclusions by numerous district courts in this Circuit further support this Court's conclusion that GEICO will suffer irreparable harm absent injunctive relief.

Here, GEICO alleges that Defendants have perpetrated a fraudulent billing scheme by submitting thousands of fraudulent, medically unnecessary claims to GEICO for financial gain under New York's No-Fault insurance regime. (*See* Compl. ¶ 1.)  The complaint appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment, including "a representative sample of the fraudulent claims" (*id.* ¶ 9), which shows 15,927

allegedly fraudulent claims identified by GEICO as of the date the instant suit commenced. (*Id.*, Ex. 1 (examples of the fraudulent scheme where medical equipment was based on false prescriptions and often never provided to insureds); Ex. 2 (examples of how Defendants misrepresented their compliance with local licensing requirements); Exs. 1-3 (examples of Defendants paying fictitious businesses as a way to obtain illegitimate and medically unnecessary prescriptions for medical equipment); Exs. 1-3 (examples of the fraudulent protocols that were utilized by referring providers including prescribing predetermined equipment regardless of a patient's individualized circumstances or prescribing on days no patients were actually examined); Exs. 1-3 (examples of Defendants deciding on their own equipment to bill GEICO for vague prescriptions from referring providers with inconsistent billing healthcare codes); Exs. 1-3 (examples of Defendants misrepresenting the type and nature of equipment provided to patients or delivering inadequate equipment to the extent they even provided any to patients); Exs. 1-3 (examples of Defendants inflating the permissible reimbursements of medical equipment and rental medical equipment).)

According to GEICO, Defendants are currently prosecuting more than 196 arbitrations against GEICO pending before the AAA seeking to recover more than $315,000 in total; and 656 lawsuits against GEICO pending in various New York civil courts, seeking to

recover more than $1.185 million in total.   (Asmus Decl. ¶ 20.)
In addition, GEICO's declaratory judgment claim against the
Defendants directly relates to more than 2,100 outstanding
individual bills (which collectively seek more than $1.1 million)
that were submitted to GEICO, denied by GEICO, and have not yet
been the subject of a collection arbitration or collection lawsuit.
(*Id.* ¶ 21.)   Without injunctive relief, GEICO asserts that it will
suffer irreparable harm in the form of wasted resources and
inconsistent arbitration decisions and judicial judgments.   This
Court agrees.   Indeed, allowing the 196 collection arbitrations to
proceed before different arbitrators, and 656 state lawsuits to
continue in parallel proceedings, would very likely subject GEICO
to "independent and contradictory conclusions" that ultimately may
"be rendered ineffective by this Court," pending the disposition
of GEICO's instant lawsuit.   *Mayzenberg*, 2018 WL 6031156, at *5.
Moreover, under these circumstances, the Court agrees that GEICO
will suffer irreparable injury that "is neither remote nor
speculative" without injunctive relief because Defendants may
continue to commence arbitrations before the AAA and state lawsuits
for outstanding claims.   *Grand River Enter. Six Nations, Ltd. v.
Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).   Because Defendants failed
to confront and distinguish this Court's reasoning in *Advanced
Comprehensive Laboratories* and *Wellmart*, for the reasons explained
in those cases, this Court similarly rejects Defendants' argument

that GEICO will not suffer irreparable harm absent injunctive relief.

Defendants also rely heavily on *Allstate Insurance Co. v. Avetisyan*, No. 17-cv-4275, 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018). That case is materially distinguishable from the present matter. In *Avetisyan*, Plaintiffs argued that an injunction was warranted because continued arbitration and litigation in parallel proceedings presented a serious risk of inconsistent rulings, but the Court found that no such risk existed because the fraudulent coding and billing activity Plaintiffs alleged in support of their federal RICO claim and request for declaratory judgment were not asserted as defenses in the parallel proceedings. *Id.* at *2, *4. Here, by contrast, GEICO has asserted lack of medical necessity and fraudulent billing both as a defense in the pending arbitrations and as a basis for declaratory judgment in this case. (Pl. Mem. 3). As Defendants have 656 civil court lawsuits pending against GEICO as of Plaintiffs' filing that involve the same claims as GEICO's declaratory judgment claim in this action, an injunction staying the state lawsuits until this action is resolved is necessary to aid this Court's jurisdiction, protect this Court's ability to issue a declaratory judgment, prevent inconsistent results, and avoid wasting judicial resources for all parties involved.

Furthermore, GEICO has provided undisputed evidence that future monetary compensation would be insufficient.  GEICO has demonstrated it would be irreparably harmed because it would not be able to collect on any judgment against Defendants because they have not billed GEICO for services provided since the year 2021, no longer conduct business, and are essentially judgment-proof. (Curto Decl. ¶¶ 11-23.)  If Defendants are no longer in operation and permitted to prosecute ongoing collection proceedings, GEICO's harm may not be limited to inconsistent judgments or the unnecessary expenditure of time and resources.  Given the showing that Defendants appear to be non-operational, any dollar awarded to Defendants in a AAA or state court collection proceeding may be permanently unrecoverable, even if GEICO ultimately prevails in this case.

If Defendants are permitted to prosecute the ongoing collection proceedings, GEICO faces imminent and non-speculative risks of inconsistent judgments and unnecessary, and potentially unrecoverable, expenditures of time and resources on arbitrations and state court lawsuits that may be resolved by the instant, pending declaratory judgment action.  Accordingly, the Court concludes that GEICO has demonstrated irreparable harm absent injunctive relief.

**b. Serious Questions Going to the Merits**

Furthermore, for a preliminary injunction to issue, there must also be either "a likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in the movant's favor. *Parisien*, 352 F. Supp. 3d at 234 (E.D.N.Y. 2018) (citing *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.* (quoting *Elzanaty*, 929 F.Supp.2d at 217); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.").

Here, as in *Advanced Labs* and *Wellmart*, GEICO meets the threshold of showing a serious question going to the merits. *See Advanced Comprehensive Laboratory,* 2020 WL 7042648 at *6; *Wellmart* 435 F. Supp. 3d at 453. Plaintiffs seek injunctive relief against Defendants' pursuit of collection arbitrations and lawsuits, and a declaratory judgment that Defendants have "no right to receive payment for any pending bills submitted to GEICO because the bills submitted to GEICO for Fraudulent Equipment and/or Fraudulent Rental Equipment were based – not upon medical necessity but – as a result of its participation in unlawful financial arrangements." (Compl. ¶ 496.)

GEICO's evidence in support of the motion for injunctive relief and declaratory relief, as set forth in its motion and exhibits to the complaint "detail a complicated scheme of alleged fraudulent activity," *Elzanaty*, 929 F. Supp. 2d at 222, supported by specific examples and exhibits. For example, the complaint provides a detailed narrative and examples of multiple instances, in which the Defendants utilized purposely generic and vague prescriptions that were purportedly issued by the providers and provided to the Defendants for fraudulent medical equipment in that: (i) the descriptions on the prescription forms could apply to multiple types of medical equipment; or (ii) the prescriptions included descriptions and healthcare codes that referenced different types of medical equipment. (*Id.* ¶ 83-89; Ex. 1.)

Defendants also sought reimbursement for fraudulent charges related to the rental of medical equipment, by prescribing complex devices for weeks at a time based upon prescriptions received after minimally invasive procedures, even though post-operative physical therapy would have obviated the need for medical devices. (*Id.* ¶ 105; Ex. 3.) Further, GEICO also alleges that one of the defendants did not comply with local licensing provisions, a necessary requirement to provide medical equipment to automobile accident victims within the New York City. (*Id.* ¶¶ 114-22, 133; Ex. 2.)

Moreover, after obtaining medically unnecessary prescriptions for medical equipment, Defendants would bill GEICO for (i) equipment that was not reasonable or medically necessary; (ii) equipment that was not based on valid prescriptions from licensed healthcare providers; (iii) equipment that was never provided to insureds; (iv) equipment that did not match the healthcare contained in the bills to GEICO; (v) equipment at grossly inflated reimbursement rates; and (vi) equipment that was otherwise not reimbursable (*Id.* ¶¶ 97, 113; Exs. 1, 3.) The complaint also appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment, including "a representative sample of the fraudulent claims," (*Id.* ¶ 9; Exs. 1-3), which shows 15,927 allegedly fraudulent claims identified by GEICO as of the date the instant suit commenced.

Viewing the record collectively, the complaint's detailed allegations and appended documents, and GEICO's declarations and other submissions in support of its motion, satisfy the heightened "likelihood of success" standard with respect to Plaintiffs' statutory and common law causes of action, and, at a minimum, raise a serious question going to the merits as to whether Defendants were fraudulently providing equipment and rental equipment that was not medically necessary. *See Parisien*, 352 F. Supp. 3d at 234 (finding serious question going to the merits where the complaint and exhibits alleged Defendants provided unnecessary medical services); *Elzanaty*, 929 F. Supp. 2d at 222 (finding serious question going to the merits where complaint alleged "complicated scheme" of fraud). In any event, given this Court's finding of irreparable harm to Plaintiffs, sufficiently serious questions going to the merits, and as the Court will discuss next, a balance of hardships tipping decidedly in favor of granting the stay and injunctive relief, the Court need not and does not further address the likelihood of success. *See Strutsovskiy*, WL 4837584, at *8 (declining to address the likelihood of success where the Court found "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in favor of granting the stay"); *Parisien*, 352 F. Supp. 3d at 234 (declining to address likelihood of success where the

Court found "that there are 'serious questions going to the merits' in lieu of a 'likelihood of success on the merits'").

Defendants contend that GEICO's allegations are conclusory and lack evidentiary support as to the identities of the referring healthcare providers and contend that GEICO did not bring suit against any of those individuals in particular. (Def. Mem. 11.)  The Court finds that GEICO's complaint need not identify those referring providers in order to grant relief.  The gravamen of Plaintiffs' claim is that Defendants have concocted a fraudulent scheme to submit claims to GEICO for medically unnecessary equipment and rental equipment, and the mere fact that GEICO has not, at this preliminary stage, identified the referring healthcare providers that Defendants have involved in that scheme is not determinative.  At this stage, GEICO has demonstrated "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Moshe*, 2020 WL 3503176, at *3 (internal quotations omitted).  As explained above, however, GEICO provided detailed allegations and documents in its complaint and further supported those allegations with declarations from Asmus and Curto.  Thus, this Court concludes that GEICO has presented evidence raising sufficiently serious questions going to the merits of this action.

In their opposition, Defendants reference in passing the Anti-Injunction Act ("AIA") by merely offering a long block quote,

but without any meaningful analysis. (Def. Mem. 8). Defendants'
scant argument is inadequate to convince this Court that injunctive
relief must be denied and should be considered forfeited at this
stage. *See Doe v. Trump Corp.*, 6 F.4th 400, 409 (2d Cir. 2021)
(holding that, if the only mention of an issue is in a "passing
string cite" "without further explanation or argument," the party
failed to raise an argument before the district court and forfeited
it); *United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001)
("merely incant[ing] [a] phrase without offering any argument or
explanation of the point" to the district court is "insufficient
to preserve the issue for appeal"). Even if Defendants had
properly challenged this Court's authority to enjoin pending or
future state court collections actions on account of the AIA, that
argument would not defeat GEICO's claim for injunctive relief at
this stage. The AIA provides a statutory exception that permits
a federal court to stay state court proceedings "where necessary
in aid of its jurisdiction, or to protect or effectuate its
judgment." 28 U.S.C. § 2283; *see Parisien*, 352 F. Supp. 3d at
224; *see also MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d
Cir. 1999) (stating that staying state court proceedings is
permitted when it falls within one of the "specifically defined
exceptions" in the AIA). In recent and analogous cases to this
one, courts in this Circuit have concluded that, through that
exception to the AIA, the courts were authorized to stay the state

court collection lawsuits GEICO have faced pending disposition of GEICO's claims in federal court. *See Gov't Emps. Ins. Co. v. Big Apple Med Equipment, Inc.*, No. 20-cv-5786, D.E. 52, at 6 n.6 (E.D.N.Y. March 25, 2021); *Parisien*, 352 F. Supp. 3d at 232; *State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*, No. 16-cv-4948, Minute Entry (E.D.N.Y May 18, 2017).

   **c. Balance of Hardships**

   Lastly, the Court must balance the hardships of GEICO and Defendants.  Given the Court's finding that Plaintiffs will be irreparably harmed and that there are "serious questions going to the merits," for a preliminary injunction to issue, the Court must further determine whether there the "balance of hardships tips decidedly" in GEICO's favor. *Parisien*, 352 F. Supp. 3d at 234. Consistent with this Court's decision in *Advanced Labs* and *Wellmart*, if the Court grants Plaintiffs' motion to enjoin the underlying collection proceedings and GEICO fails to prove its claims, "then, at worst, [defendants'] recovery of the no-fault benefits to which they are entitled will be delayed; all [defendants] can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled." *Id.* at 234–35.  If Defendants' pending arbitration and civil collection proceedings are not stayed, then, as discussed above, GEICO will suffer irreparable harm because money damages will be inadequate to remedy the

Plaintiffs' time and losses, and because of the risk of inconsistent outcomes. Accordingly, the balance of hardships tips decidedly in favor of GEICO.

Furthermore, in balancing the hardships experienced by defendants, this Court also concludes that Defendants will suffer no prejudice if their right to collect the pending billing is adjudicated in a single declaratory judgment action. "Indeed, granting the stay and injunction will actually save all parties time and resources. Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action." *Cean*, 2019 WL 6253804, at *5 (citing *Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will benefit from having the issue of fraudulent incorporation determined in one action")). Like defendants in other similar actions, here, Defendants "will benefit from the stay if [they] ultimately prevail[ ] in this matter because [they] will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue." *Strutsovskiy*, at *8 (quoting *Elzanaty*, 929 F. Supp. 2d at 222); *see* 11 NYCRR § 65-3.9(1)(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month.").

For the reasons set forth above, because GEICO has made the requisite showing for the Court to grant a stay and preliminary injunction, and because Defendants will not be prejudiced, GEICO's motion is granted.

### d. Undertaking

Federal Rule of Civil Procedure Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Though the Rule appears to use mandatory language, an exception to the bond requirement has been crafted for cases involving the enforcement of "public interests" arising out of "comprehensive federal health and welfare statutes." *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995). In determining if claims involve the enforcement of public interest, "the nature of the rights being enforced, rather than the nature of the entity enforcing them, is the central consideration in determining whether the bond requirement should be waived under this exception." *Id.* at 1175. Further, a district court has a wide discretion to dispense with the bond requirement "where there has been no proof of likelihood of harm." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

Although there is no federal health and welfare statute involved in this action, New York's No-Fault insurance statutes are laws "designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay." *Mayzenberg*, 2018 WL 6031156, at *10. In *Mayzenberg*, the court waived the security requirement of Rule 65(c) in light of the systemic nature of the fraud alleged in the complaint and the lack of prejudice to the defendants resulting from a preliminary injunction. *Id.* The same considerations justify dispensing with the bond requirement here, particularly where Defendants' operational capacity and risk of prejudice are in doubt.

**CONCLUSION**

For the reasons set forth above, GEICO's motion for preliminary injunctive relief is GRANTED, pending resolution of the instant federal action, to (1) stay all pending No-Fault collection arbitrations between Defendants and GEICO pending before the AAA; and (2) to enjoin Defendants from commencing any new No-Fault insurance collection arbitrations or collection lawsuits against GEICO.

The parties shall proceed to discovery and are hereby referred to Magistrate Judge Peggy Kuo for all pre-trial matters. Because the Court is preliminarily staying Defendants' rights to commence further No-Fault insurance arbitrations and collection lawsuits against GEICO on behalf of Defendants, all procedures in this matter should proceed on an expedited basis.

SO ORDERED.

_____/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

Dated: Brooklyn, New York
       May 2, 2022